UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> ROYCE A. PLETCHER, <br><br> Defendant, <br> ──────────────────────── <br><br> ROYCE A. PLETCHER *et al.,* <br><br> Counterclaimant, <br><br> v. <br><br> AUTO-OWNERS INSURANCE COMPANY, <br><br> Counterclaim Defendant, <br> ──────────────────────── <br><br> ROYCE A. PLETCHER, <br><br> Cross-claimant, <br><br> v. <br><br> KFG INSURANCE AGENCY, LLC *et al.*, <br><br> Crossclaim Defendant, <br> ──────────────────────── <br><br> K&Q ENTERPRISES, LLC, <br><br> Cross-claimant, <br><br> v. | Case No. 3:18-CV-949-JD-MGG |

1

|  |  |
|---|---|
| KFG INSURANCE AGENCY, LLC *et al.*, | ) |
|  | ) |
| Crossclaim Defendant, | ) |
|  | ) |

**OPINION AND ORDER**

A fire in August 2018 fueled by soiled paint rags severely damaged a recreational vehicle painting business in the Elkhart area. Following the fire, the business, K&Q Enterprises, and its owner, Robert Pletcher, started collecting on an insurance policy they had with Auto-Owners Insurance Company. But the insurance company soon stopped payment and sought to rescind the policy, claiming Mr. Pletcher and his company had lied on their initial application to get the policy by stating they had a commercial painting booth when in fact one was never installed. Litigation ensued involving not only the insurance company, Mr. Pletcher, and his business, but also the insurance agent and her employer who had helped Mr. Pletcher complete the application. Mr. Pletcher alleged in a crossclaim that the insurance agent, Leann Davis, and her employer, KFG Insurance Agency, were negligent in helping him obtain the policy. Ms. Davis and KFG challenge that allegation in this Motion for Summary Judgment. For the following reasons, the Court grants the motion.

**I. Factual Background**

Mr. Pletcher formed K&Q Enterprises in 2017 to provide painting services to the recreational vehicle industry in and around Elkhart, Indiana. He had been in the vehicle painting business since he was a teen. In March 2018, K&Q leased commercial space in Elkhart and, as required by the lease agreement, Mr. Pletcher sought commercial general liability and casualty

2

insurance for the business. (DE 79 at 2–3; DE 86-3 at 20–21; DE 89 at 2, 4.) He contacted KFG as part of his effort to find suitable insurance and was eventually directed to speak with Ms. Davis, a licensed insurance professional with KFG in Indiana. Mr. Pletcher and K&Q ("Shop Plaintiffs") had never had contact with KFG or Ms. Davis ("Agency Defendants") before Mr. Pletcher called about obtaining insurance. After listening to Mr. Pletcher explain his situation and his business's insurance needs, Ms. Davis decided to try to place the Shop Plaintiffs with an Auto-Owners Insurance Company ("AOIC") policy. AOIC requires prospective clients to submit an initial application for insurance, so Ms. Davis began filling the application out on Mr. Pletcher's behalf while she had him on the phone and could confer with him on how to answer the application questions. (DE 79 at 3; DE 89 at 4–6.)

One portion of the AOIC application asked whether there was a paint booth installed on the K&Q premises for use in the company's painting business. Mr. Pletcher told Ms. Davis there was not a paint booth on the premises but that he planned to install one in the future. Unsure how to proceed given Mr. Pletcher's answer, Ms. Davis reached out to AOIC for help. She spoke with Kim Durkes, a representative with AOIC's underwriting department, who helped her complete the application. During the conversation, Ms. Davis explained Mr. Pletcher's situation and told Ms. Durkes that there was not currently a paint booth on the premises. Ms. Durkes told Ms. Davis that AOIC would accept K&Q's risk and agree to coverage so long as there was a paint booth installed by the time AOIC later conducted its underwriting inspection on the property. Based on what Ms. Durkes told her and Mr. Pletcher's statement that he planned to install a paint booth, Ms. Davis marked "yes" on the portion of the application asking whether there was a paint booth on the premises. She then sent the completed application to Mr. Pletcher who signed

it, assuming Ms. Davis had completed the application correctly. Ms. Davis then submitted the application to AOIC in early April 2018. (DE 79 at 4–5; DE 89 at 6–8.)

AOIC accepted the application and issued its policy covering K&Q and Mr. Pletcher's operations on April 25. In the weeks after the policy issued, Mr. Pletcher determined that getting a commercially built paint booth in the near future would be too expensive and instead chose to build his own enclosure on the premises out of lumber and plastic. On May 4, AOIC commissioned an inspection of K&Q's premises that found K&Q did not have a paint booth on the property. AOIC received the information from the inspection by at least June 8 but did not cancel the policy. It did not order another inspection until July 12 at which point Mr. Pletcher still did not have a commercial paint booth installed. AOIC had contacted Ms. Davis to express concerns after it discovered the lack of a paint booth and Ms. Davis relayed information between AOIC and Mr. Pletcher about those concerns. There is no allegation for purposes of this motion that she did so inaccurately. (DE 79 at 7–8; DE 89 at 9–13.)

On August 9, there was a fire on the leased premises that prompted Mr. Pletcher, through K&Q, to file claims to collect on the insurance policy. AOIC paid several claims over the next two months but eventually stopped payment and cancelled the insurance policy alleging Mr. Pletcher fraudulently induced the company to issue the policy by submitting an application that inaccurately stated there was a paint booth on the business premises. AOIC then initiated the present action to rescind the policy and collect damages. (DE 89 at 13–14.)

The Agency Defendant's motion for summary judgment only concerns the crossclaim dispute between K&Q, Mr. Pletcher, Ms. Davis, and KFG that sprang out of AOIC's lawsuit.[1]

---

[1] AOIC filed a response opposing summary judgment. The Agency Defendants objected to the response claiming that AOIC lacks standing. But the Court need not reach that issue because the briefs of the parties to the crossclaim were sufficient to decide the motion.

The crossclaim alleges that Ms. Davis negligently completed the application forms and that KFG, as Ms. Davis' employer, is liable for her negligence under the theory of respondeat superior.

## II. Standard of Review

Summary judgment is proper when the moving party shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Yet, where a factual record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party, as well as draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). However, the nonmoving party cannot simply rest on the allegations or denials contained in its pleadings. Summary judgment is the "put up or shut up" moment in the lawsuit for the nonmoving party where it must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). It is not enough for the nonmoving party to simply show there is some metaphysical doubt as to the material facts or present a mere scintilla of evidence in support of

its position. Instead, there must be evidence on which the jury could reasonably find in favor of the nonmoving party. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citing *Matsushita*, 475 U.S. at 586–87; *Anderson*, 477 U.S. at 252). Because the Court is sitting in diversity, the Court relies on the substantive law of Indiana. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

### III. Discussion

The Agency Defendants present three arguments in support of their motion for summary judgment: 1) that Mr. Pletcher's signing of the insurance application attesting to its accuracy precludes the negligence claim; 2) that the Shop Plaintiffs have not sufficiently established that the Agency Defendants breached a standard of care; and 3) that there is no evidence to establish a proximate cause link between the Agency Defendants' actions and the Shop Plaintiffs' lack of coverage. The Court need only address the second argument because it provides a sufficient basis on which to grant summary judgment.

Indiana law requires a plaintiff to prove three elements to recover on a negligence claim. First, that the defendants owed the plaintiff a duty to conform their conduct to an applicable standard of care arising from their relationship. Second, that the defendants deviated from that standard of care. And third, that the conduct proximately caused the plaintiff damages. *Briesacher v. Specialized Restoration and Constr., Inc.*, 888 N.E.2d 188, 192 (Ind. Ct. App. 2008). The plaintiff in a negligence action has the burden of establishing a standard of care and a deviation from that standard. *Cox v. Paul*, 828 N.E.2d 907, 912 (Ind. 2005). Whether the defendant's act or omission falls below that standard of care is generally a question of fact for

the jury, but it can be a question of law "if the facts are undisputed and only a single inference can be drawn from those facts." *Briesacher*, 888 N.E.2d at 194 (citing *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003)). Further, summary judgment is generally inappropriate in negligence cases because of the underlying factual issues for a trier of fact to determine, but whether the evidence the plaintiff has produced is sufficient to establish a cause of action for negligence is a question of law to be decided by the court. *Coffman v. PSI Energy, Inc.*, 815 N.E.2d 522, 527 (Ind. Ct. App. 2004) (citing *Miller v. Griesel*, 308 N.E.2d 701, 707 (Ind. 1974)). And an employer is vicariously liable for the actions of its employee under the doctrine of respondeat superior only where the employee has been negligent while acting within the scope of employment. *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008). The first element of negligence is not disputed in the parties' briefs. Therefore, the Court moves directly to consider whether the Shop Plaintiffs can establish the second element of negligence, breach.

To survive summary judgment, the Shop Plaintiffs must point to sufficient evidence to support their claim that the Agency Defendants breached their standard duty of care. *See Siegel*, 612 F.3d at 937. The Agency Defendants argue that the Shop Plaintiffs have failed to do so, in large part because the Shop Plaintiffs do not have expert testimony to define what it means to abide by the standard insurance agent duty of care in Indiana. Without first having a proper definition of the scope of the duty, they assert, the Shop Plaintiffs cannot adequately show that there was a breach. The Agency Defendants' argument draws from Indiana's requirement that parties elicit expert testimony to define duties in negligence cases for other professionals like engineers, pharmacists, and real estate brokers. *See Troutwine Estates Dev. Co. LLC v. Comsub Design & Eng'g Inc.*, 854 N.E.2d 890, 902 (Ind. Ct. App. 2006) (standard for engineers); *Masick v. McColly Realtors, Inc.*, 858 N.E.2d 682, 689 (Ind. Ct. App. 2006) (standard for real estate

7

brokers); *Shidler v. CVS Pharmacy Inc.*, No. 205-CV-209 CAN, 2007 WL 601748, at *5 (N.D. Ind. Feb. 20, 2007) (standard for pharmacists). But Indiana has not clearly extended that expert testimony standard to include insurance agents. The Shop Plaintiffs counter that this lack of a clear requirement in Indiana means that expert testimony is not necessary to establish a breach in this case. They also assert that the caselaw they cite provides the proper parameters to define the duty and that the uncomplicated nature of the factual issues would allow a juror relying solely on a lay opinion of reasonableness to accurately decide this negligence dispute. (DE 90 at 17.)

The Court recognizes that there is legitimate ambiguity over whether Indiana requires expert testimony in a case like this. But the Court does not need to decide the expert testimony question to decide this motion because the outcome would be the same whether expert testimony is required or not. If the Agency Defendants are correct that expert testimony is required under Indiana law, the Court would grant summary judgment because there is no dispute that the Shop Plaintiffs did not provide expert testimony, which would leave them with insufficient evidence to support their breach claims. Additionally, even if the Shop Plaintiffs are correct that expert testimony is not required and a reasonable jury could make a determination based solely on its conception of the underlying duty, summary judgment is still appropriate because there are no genuine disputes of material fact and a reasonable jury could not find a breach of duty given the evidence the Shop Plaintiffs have provided.

The Shop Plaintiffs rely on *Brennan* and *Roe v. Sewell*, 128 F.3d 1098 (7th Cir. 1997) to explain the type of conduct that is deemed to be a breach of an insurance agent's duty of care in Indiana. They argue the underlying facts in the cases clearly establish that insurance agents in Indiana who acted similarly to Ms. Davis were found to have acted negligently. (DE 90 at 17.) The Agency Defendants dispute that, arguing the cases are distinguishable on their facts both

8

because of the type of insurance being sold and the insurance agents' conduct in the cited cases. (DE 94 at 10.)

In *Brennan*, an insurance agent helped a woman by filling out an application for homeowner's insurance on her behalf while she answered the questions. One portion of the application asked whether the applicant had any animals or exotic pets and asked the applicant to note breed or bite history. *Brennan*, 904 N.E.2d at 385. The woman told the insurance agent she had dogs, which prompted the agent to ask whether the dogs were vicious. The woman answered that they were not, and the insurance agent marked "no" on the application, reasoning he did not have to disclose her dogs because she said they were not vicious. *Id.* at 385. The woman then signed the application, trusting that the insurance agent completed it accurately. *Id.* When one of the woman's dogs, a Doberman Pinscher, later bit the woman's niece, the insurance company denied coverage because of the faulty application, saying it would never have issued coverage if it had known the woman owned Dobermans. *Id.* at 386.

In *Sewell*, an insurance agent met with a woman hoping to get disability insurance. The agent filled out some portions of the company's insurance application while the woman filled out other portions. *Sewell*, 128 F.3d at 1100. After their initial efforts to complete the application, the woman and agent left one question blank that asked whether the woman had other disability coverage because the woman did not know if she had coverage through her employer. *Id.* at 1100–01. The agent told the woman he would check with her employer and answer the question later. But he never checked with her employer and instead simply marked on the application that she did not have coverage. *Id.* at 1101. The insurance company later denied the woman coverage when it discovered she did in fact have coverage through her employer. *Id.*

9

While these cases do explain insurance agent conduct that has been found to be a breach of the agent's duty of care, the cases are different enough from the present case to not be applicable here. And, even if they were, they establish a standard for breach that, when applied to Ms. Davis, would not find her to have breached her duty. There are two main reasons for that finding.

First, as the Agency Defendants assert in their reply, the cases involve homeowner's insurance and disability insurance while the present case involves a commercial policy. (DE 94 at 10.) The personal lines of insurance in *Brennan* and *Sewell* did not involve separate inspections by the issuing insurance company of the home or individual to be insured. Instead, they were heavily reliant on the information contained in the application, making misstatements or omissions in the application more harmful. In contrast, the policy at issue in the present case included a separate inspection of the premises by the issuing company, and thus the information contained in the application, while still important, did not carry as much weight.

Second, and more importantly, Ms. Davis took noticeably more precautions than the agents in *Brennan* and *Sewell*. Unlike those agents, she contacted AOIC, the issuing company, directly for help with the application and only proceeded after getting confirmation from AOIC that it would accept the risk of insuring K&Q given the underlying facts. Further, none of the parties argue that Ms. Davis' actions, even with her inclusion of the "yes" answer on the application, prevented AOIC from being fully informed about the lack of a paint booth both at the time AOIC received the application and at the time AOIC issued the policy. (DE 79 at 4; DE 89 at 9.) The insurance agencies in *Brennan* and *Sewell* were not operating with that kind of information when they issued their policies. The Shop Plaintiffs do not address these

discrepancies in their response, leaving it unclear how *Brennan* and *Sewell* can stand for the proposition that Ms. Davis breached her duty.

The evidence the Shop Plaintiffs have pointed to in the record to support their claims is also insufficient to meet their burden. A reasonable jury relying on the evidence could not conclude that Ms. Davis or KFG breached their duties. The Shop Plaintiffs assert in their counterclaim that Ms. Davis breached her duty "to accurately record and report the information given to her by [Mr.] Pletcher regarding the non-existence of a paint booth" and "negligently gave inaccurate information to [AOIC]" by marking on the application that the premises had a paint booth. (DE 48 at 9.) They stake their arguments for both claims on the fact that Ms. Davis answered "yes" on the portion of the application asking about the paint booth when she knew the answer was "no." *Id.*; (DE 90 at 9–13.) They do not assert that Ms. Davis failed to tell Mr. Pletcher about the importance of a paint booth to receiving the insurance. Evidence in the record shows Mr. Pletcher knew of the importance of a paint booth to his planned business both because he knew there was a question on the insurance application about a paint booth and because he had spent many years in the industry before starting the business. (DE 88-1 at 4; DE 86-3 at 20–21.) By relying only on Ms. Davis's answer of "yes" on the paint booth portion of the application to support their negligence claims, the Shop Defendants fall short of their burden because they fail to account for the rest of the undisputed material facts in the record that put the answer on the application in context.

The Shop Plaintiffs agree that Ms. Davis communicated with AOIC as she was filling the application out to make sure she was doing so correctly and properly representing Mr. Pletcher's situation as his agent. Specifically, they agree that Ms. Davis reached out to Kim Durkes with AOIC's underwriting department as she was completing the application and told Ms. Durkes

11

about Mr. Pletcher, including that he did not currently have a paint booth but planned to get one in the future. (DE 89 at 6.) They also agree that Ms. Davis answered "yes" on the application only after Ms. Durkes told her that AOIC would accept the risk of insuring the business so long as Mr. Pletcher followed through on that plan by the time AOIC did an inspection following its issuance of the policy. *Id.* And, finally, they agree that Ms. Davis's action of asking AOIC for help during the application process informed AOIC both when it received the application and when it issued the policy that there was not a paint booth on the premises. (DE 89 at 7, 9.)

The Shop Plaintiffs present no arguments to discount the additional precautions Ms. Davis took or to explain how there could have been a breach when they agree Ms. Davis accurately conveyed the information Mr. Pletcher gave her to AOIC. They also present no evidence to suggest AOIC relied solely on the application in issuing the policy or even that there was some internal confusion within AOIC as to whether there was a paint booth on the premises because of Ms. Davis' answer on the application. In short, the evidence points to the conclusion that given Ms. Davis's in-depth communication with AOIC before submitting the application, her answering "yes" to the paint booth question was essentially a confirmation of what Ms. Davis had already told AOIC, that Mr. Pletcher intended to get the booth on the premises soon and knew that a paint booth was required to conduct his insured business. There has been no evidence shown that Ms. Davis lied or made a misrepresentation. Instead there is only evidence to show that Ms. Davis's "yes" answer after clearing the information with AOIC conveyed exactly what she intended it to convey and what Mr. Pletcher had told her.

The Court recognizes that summary judgment is generally inappropriate in negligence cases because of the usually fact-specific nature of the underlying issues, but this is one of the rare cases where summary judgment is appropriate. The Shop Plaintiffs would have the burden

to prove negligence at trial and, at the summary judgment stage, they must produce enough evidence to support their case for their claims to survive. *See Cox*, 828 N.E.2d at 912; *Coffman*, 815 N.E.2d at 527. Given the law and undisputed facts, the evidence is insufficient for a reasonable juror to conclude that Ms. Davis breached her duty as an insurance agent to exercise reasonable care, skill, and good faith diligence in obtaining the insurance policy. And, since the Shop Plaintiffs cannot prevail against Ms. Davis, it follows that they cannot prevail against KFG, her employer, under the theory of respondeat superior. *See Barnett*, 889 N.E.2d at 283.

**IV.  Conclusion**

For those reasons, the Court GRANTS Ms. Davis and KFG's motion for summary judgment. (DE 78.)

SO ORDERED.

ENTERED: January 5, 2021

/s/ JON E. DEGUILIO
Chief Judge
United States District Court

13